1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROY P. ALLEN,

              Plaintiff,

   v.

JO ANNE B. BARNHART, Commissioner of
Social Security Administration,

              Defendant.

CASE NO.    **C05-5552RBL**

REPORT AND
RECOMMENDATION

Noted for January 12, 2007

    This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  This matter has been briefed, and after reviewing the record, the undersigned recommends that the Court affirm the administration's final decision.

INTRODUCTION

    Plaintiff, Roy P. Allen, was born in 1965, he dropped out of High School in the 11th grade and he earned a GED in 1999.  Plaintiff was previously married and he has one child.  He has work experience as a landscaper, and he last worked in 1985.  Plaintiff alleges he has been unable to work since 1985 due to back pain (Dr. 156).

    Plaintiff filed a claim or application for Title XVII Social Security benefits in 2000, which was ultimately denied when Plaintiff failed to appear for his hearing in 2001.  Plaintiff filed a second application for Title XVII Social Security disability benefits on January 28, 2002 (Tr. 82).  His claim was initially

denied on July 31, 2002 (Tr. 35), and he filed a Request for Reconsideration on September 10,. 2002 (Tr. 39).  The administration denied the request, and Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ") on December 21,2002 (Tr. 44).  The hearing was held on February 3, 2004.  The ALJ issued his decision on October 19, 2004, denying the application.  Plaintiff timely filed a request for Review of Hearing Decision/Order with the Social Security Appeals Council, but on June 5, 2005, the Appeals Council ruled against the Plaintiff.  The ALJ's decision of October 19, 2004, therefore became the final administrative decision.

    The ALJ applied the five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. § 416.920.  At step-one, the ALJ found that Plaintiff had not engaged in substantial gainful activity (Tr. 16, 23 Finding 1).  At step-two, the ALJ found that Plaintiff established the following severe impairments: lumbosacral strain syndrome with degenerative joint disease at L5-S1; an adjustment disorder; a chronic pain disorder; and a personality disorder (Tr. 17, 24 Finding 2).  At step three, the ALJ found that Plaintiff's impairments, alone or in combination, did not satisfy the Listings (Tr. 18, 24 Finding 3).  The ALJ further determined that Plaintiff retained the following residual functional capacity (RFC): lift 20 pounds occasionally, 10 pounds frequently; sit/stand at will; only occasional bending or squatting; and only occasional contact with the public (Tr. 22, 24 Finding 5).  At step four, the ALJ found that Plaintiff had no past relevant work (Tr. 22, 24 Finding 6). At step five, relying upon vocational expert testimony, the ALJ found that a younger person, with Plaintiff's RFC and vocational profile, could perform a significant number of jobs in the national economy, represented by: small products assembly (700,000 jobs nationally, 5,000 statewide); and cannery worker (500,000 jobs nationally, 5,500 jobs statewide)(Tr. 23).  The ALJ thus found Plaintiff capable of performing a significant number of jobs in the national economy and not disabled (Tr. 23, 24 Findings 10 and 11).

    Plaintiff filed a Complaint with the Court challenging the denial of his applications for benefits on August 19, 2006.  Specifically, plaintiff contends: (1) the ALJ failed to apply the proper standard in assessing the Plaintiff's subjective pain symptoms; (2) the ALJ erred by according improper weight to evidence and testimony from non-treating medical sources; and (3) the ALJ erred by improper questioning of the vocational expert.  Defendant counter-argues that the ALJ applied the proper legal standards and that the administrative findings and conclusions were properly supported by substantial evidence.

1

DISCUSSION

2    This Court must uphold the determination that plaintiff is not disabled if the ALJ applied the proper

3 legal standard and there is substantial evidence in the record as a whole to support the decision.  Hoffman

4 v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a

5 reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389,

6 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a

7 preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772

8 F. Supp. 522, 525 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the

9 Court must uphold the Secretary's decision.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

10   *A. THE ALJ PROPERLY ASSESSED THE MEDICAL OPINIONS*

11    The ALJ is entitled to resolve conflicts in the medical evidence.  Sprague v. Bowen, 812 F.2d 1226,

12 1230 (9th Cir. 1987).  He may not, however, substitute his own opinion for that of qualified medical

13 experts.  Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982).  If a treating doctor's opinion is

14 contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific

15 and legitimate reasons" supported by substantial evidence in the record for doing so.  Murray v. Heckler,

16 722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute

17 substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating

18 physician."  Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996).  In Magallanes v. Bowen, 881 F.2d 747,

19 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of  a treating physician's opinion

20 because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied

21 on laboratory test results, contrary reports from examining physicians and on testimony from the claimant

22 that conflicted with the treating physician's opinion.

23    Here, plaintiff contends the ALJ improperly evaluated the opinion of Dr. Bell.  Dr. Bell is Plaintiff's

24 treating physician, and in 1995, Dr. Bell concluded opined:

25    Mr. Roy Allen is a patient under my care for chronic lumbosacral strain syndrome.
He has had surgery without any significant benefit.  He has developed a syndrome of
26    intractable low back pain aggravated by any significant lifting, twisting, or bending.
I do not think this patient is going to be able to return to work, and he is going to
27    have to live with his current level of comfort.

28

(Tr. 231).  On October 24, 2002, Dr. Bell further noted:

> [Mr. Allen] is generally unemployable, unlikely to work full time.  He stands 20 minutes to walk, walks about ½ block and gets short of breath and severe back pain. He cannot do anything greater than 20 minutes in terms of walking, lifting, twisting, and bending.  He cannot lift things up that are 10 or 15 pounds over his head.

(Tr. 298).

As noted above, the ALJ may reject the opinion of a treating physician if the ALJ provides, "specific and legitimate reasons" supported by substantial evidence in the record.  Here, the ALJ gave specific and legitimate reasons to reject the treating opinions of Dr. Bell.  The ALJ explained his reasoning and decision as follows:

> Based on the objective record, medical expert David R. Rullman, M.D., testified that all neurological evaluations are normal, the record contains no evidence of spina bifida, and x-rays are also normal, showing ordinary abnormalities that occur in most people after the age of 20.  While emphasized by the representative, the medical expert did not endorse the diagnosis of failed back syndrome which, as previously discussed, was briefly cited by Dr. Bell and Dr. Doorani.  However, Dr. Rullman explained that chronic pain syndrome is a recognized diagnosis.

> A single evaluation supports the allegations of the claimant and describes him as unable to function.  In a consultative evaluation on June 20, 2002, by Anand Vaishnav, M.D., the claimant reported arthritis for years with low back pain; neck pain; arthritis in the elbows, wrists, and knee joints, arising in the past month; fibromyalgia for 3 to 4 years; asthma since childhood; and a remote history of spina bifida (Exhibit B1F).  While the representative has more recently raised prior spina bifida as an issue, this is the only reference to this condition.  In making this evaluation, the physician had the records from Dr. Bell.  It should be noted that objective records reflect no evidence of degenerative joint disease.  On this occasion, Mr. Allen denied any complaints regarding the lower extremities, had a normal gait, and was able to get on and off the examination table without difficulty.  The physician reports normal range of motion in the back, neck , hips, knees, shoulders, elbows, and ankles; straight leg raising was normal; strength, muscle bulk, and tone were normal; and sensory responses and reflexes were normal.  Despite the absence of deficits or objective documentation, the diagnosis was of degenerative arthritis at the cervical level, in the low back, and in the knees, elbows, and ankles.  Finally, Dr. Vaishnav reports that the claimant is capable of only standing or walking 30 minutes out of 8 hours, sitting 30 minutes out of 8 hours, and lifting a maximum of 10 pounds.  The opinion in this consultative evaluation is neither credible nor entitled to weight in this decision.  There is complete lack of objective basis for the limitation imposed; the functional level is substantially less than that demonstrated by the claimant to this physician; and the limitations are greater than alleged by the claimant or found by any source.

> The balance of the objective record provides scant support for the allegations of the claimant that he experiences unrelenting pain of such severity that he is incapable of functioning.  As noted by psychologist Bowerly, despite his reported high pain, during an extended evaluation Mr. Allen did not exhibit behavior associated with discomfort.  The claimant does not have a history of engaging in regular work activity, having relied on public support and the support of relatives for almost 2 decades.  Even the treating neurologist, Dr. Bell, whom the representative urges be given greater credibility that the medical expert, is not willing to state that the claimant is incapable of all work activity.  In responding to the question posed by the representative whether the reports of severe back pain are inconsistent with the findings or lack of findings or MRI and x-ray evaluations, Dr. Bell states that he has felt that the claimant has chronic lumbrosacral stain with secondary

myofascial pain.  He explains that attempts to find a correctable cause for this pain have not shown anything which can be done and, while there is some degenerative disc disease, there is nothing that could be surgically corrected (Exhibit B17F).  Dr. Bell notes that the claimant feels that his pain is so severe that he is unable to work, but his is obviously a subjective evaluation, and again urges that a functional capacities evaluation be done to clarify this.  Finally, the physician states that he does not know if myofascial pain and degenerative disc disease are sufficient to keep the claimant form working.

While Dr. Bell urges a functional capacities assessment, he evidently was never made aware that a Physical Capacity Evaluation was conducted by Healthsouth, the source he recommended, on October 7, 2002 (Exhibit B14E).  At this time Mr. Allen reported that he was able to sit 30 minutes, stand 15 minutes, walk 15 minutes, drive 30 minutes, and lift 15 pounds.  The comprehensive evaluation quotes maximums in a day of sitting 4 hours, standing 1.5 hours, and walking 2.5 hours, with lifting in the medium range.  Gait is normal, weight is 233 pounds, and Mr. Allen is unable to squat due to back pain; he is able to bend, stoop, reach overhead, crawl, kneel, climb a ladder, twist, push and pull, stand, walk, and climb stairs occasionally; and he is able to repetitively reach and sit frequently.  The report notes a score of 13 out of 16 on magnified illness behavior, and that the claimant is capable of lifting a maximum of 30 pounds occasionally, which is medium activity based on the United States Department of Labor, Dictionary of Occupational Titles.  The evaluation then states that due to poor body mechanics and poor tolerance to squatting and stooping, Mr. Allen would be better suited to light activity up to 8 hours a day.

On July 16, 2004, Dr. Bell responded to a form submitted by the representative regarding physical capacities and disorder of the spine (Exhibit B19F).  The physician did not complete this form, instead writing that he thought that the claimant needs a physical capacity evaluation.  Dr. Bell notes that some individuals do not experience a great deal of improvement following back surgery.  He states that, while it is possible that Mr. Allen exaggerates the intensity of his chronic back pain, he is not able to give a definitive answer, as there is no way he knows of objectively monitoring the severity of somebody's pain.

While a comprehensive physical capacity assessment of the claimant was conducted in October 2002, a second Physical Capability Evaluation, again at Healthsouth, was conducted on March 16, 2004 (Exhibit B18F).  Curiously, again the primary treating neurologist has not been made aware of this assessment.  At this time Mr. Allen reported that he is able to sit for 30 minutes, stand 10 minutes, walk 20 minutes, drive 25 minutes, and lift 8 pounds.  His weight was 252 pounds.  In contrast to his perceived abilities, based on demonstrated ability, the claimant is rated as being capable of light work, again based on the Dictionary of Occupational Titles.  On actual performance, the claimant was lifting 25 pounds occasionally and 18 pounds frequently, but using poor body mechanics to perform these lifts.  The report states that he is suited for full time work in the light category of work for up to 8 hours per day, with the ability to change positions of sitting, standing, and walking as needed in accordance with his demonstrated abilities.  Squatting and stooping should be restricted due to poor tolerance and pain of 8/10 reported by the claimant.  The evaluation also states that the claimant had inconsistent performance and self limiting behavior.

These comprehensive evaluations demonstrate clearly that the limitations and deficits alleged by the claimant are not credible.  During the evaluations Mr. Allen was fully aware that he [sic] his performance was being observed, measured, and recorded.  These evaluations are precisely what treating neurologist J. Bruce Bell, M.D., states is needed to determine the claimant's actual ability level, as well as to assess his credibility regarding pain complaints.  Again, it must be pointed out that this treating physician evidently has no knowledge of this available objective data.  When combined with the balance of the record, the record as a whole, and with consideration of all factors, it is clear that the claimant retains the residual functional capacity for light exertional level physical activities

1
2
3

      compromised by exertional and non-exertional limitations.  His ability to perform the full range of light activities is limited by only occasional bending or squatting and being able to sit or stand at will.  Contact with the public is also limited to occasional.  The credibility of the claimant regarding allegations of disabling limitations and pain is significantly compromised by these objective findings of the physical abilities he clearly demonstrated.

4 (Tr. 20-22).

5       As evidenced by the above quoted explanation, the ALJ properly considered the medical opinions

6 related to Mr. Allen's limitations.  More specifically, the ALJ properly considered and evaluated the

7 opinions of Dr. Bell.   The ALJ discredited Dr. Bell's statements suggesting Mr. Allen was totally disable

8 based on the opinion of the medical expert (Dr. Rullman) and the physical evaluations completed by the

9 physical therapists at Healthsouth.  The ALJ clearly explained he was relying on this medical evidence,

10 which supports the ALJ's assessment of Plaintiff's RFC and the conclusion that Mr. Allen retained the

11 ability to certain types of light work.   The ALJ was entitled to rely on the opinions of the medical expert

12 (Dr. Rullman, who was a nonexamining physician) along with the objective physical assessments made by

13 Plaintiff's physical therapists (Healthsouth), rather than the statements made by Dr. Bell (plaintiff's treating

14 physician) and argued by Plaintiff suggesting he was completely disabled.

15 **B.**    ***THE ALJ PROPERLY WEIGHED MR. ALLEN'S CREDIBILITY***

16       Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (*en banc*), is controlling Ninth Circuit authority

17 on evaluating plaintiff's subjective complaints.   Bunnell requires the ALJ findings to be properly supported

18 by the record, and "must be sufficiently specific to allow a reviewing court to conclude the adjudicator

19 rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's

20 testimony regarding pain.'"  Id. at 345-46 (quoting Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215

21 (11th Cir. 1991)).  An ALJ may reject a claimant's subjective complaints, if the claimant is able to perform

22 household chores and other activities that involve many of the same physical tasks as a particular type of

23 job.  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) However, as further explained in Fair v. Bowen,

24 *supra*, and Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996), the Social Security Act does not require

25 that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be

26 easily transferrable to a work environment where it might be impossible to rest periodically.

27       Here, plaintiff raises the issue of whether the ALJ erred in finding plaintiff's testimony not credible.

28 After reviewing the record, the court finds substantial evidence in the record supports the ALJ's analysis.

As noted above in discussion of the medical evidence, the ALJ specifically noted the inconsistency between Plaintiff's allegations regarding the severity of his limitations and the assessments made by the physical therapists at Healthsouth.  The record indicates inconsistency of effort in strength testing on Plaintiff's physical capacities examination (Tr. 312), and in October 2002, evaluators noted 13 of 16 magnified illness behaviors and, again, identified poor effort (Tr. 175).

After reviewing the ALJ's decision and the administrative record, it is clear the ALJ has provided sufficient evidence to discredit the Plaintiff's allegations of total disability.  Accordingly, the ALJ properly discredited plaintiff's testimony and allegations suggesting total disability.

## C.   *SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S FINDING THAT MR. ALLEN IS ABLE TO PERFORM CERTAIN TYPES OF LIGHT WORK*

Plaintiff argues the ALJ erred when he relied on the Vocational Expert's testimony.  Here the ALJ relied on the Vocational Expert's testimony to conclude plaintiff retained the ability to performing  work within the national economy, i.e., small product assembly and cannery worker.

At step-five of the administrative process the burden of proof shifts to the Commissioner to produce evidence of other jobs existing in significant numbers in the national economy that Plaintiff could perform in light of his age, education, work experience, and residual functional capacity.  *See* Tackett v. Apfel,180 F.3d 1094,1099 (9th Cir. 1999); Roberts v. Shalala, 66 F.3d 179, 184 (9th Civ. 1995).  In Tackett, the court noted "there are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can perform: (a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, subpt. P, app. 2." Id.

Plaintiff's allegation that the ALJ erred when he relied on the Vocational Expert's testimony is without merit.  Plaintiff's argument is based on the allegation that the ALJ failed to properly take into account the medical evidence, particularly the opinions of Dr. Bell, and that the ALJ failed to properly credit Plaintiff's allegations regarding the severity of his impairments.  As explained above, the ALJ did not err in his analysis of the medical evidence or Plaintiff's credibility.  The ALJ is not obligated to accept all of a claimant's proposed limitations, as long as the ALJ's findings are supported by substantial evidence.  See Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001).  Accordingly, the ALJ properly questioned the Vocational Expert and relied on the testimony.

1

CONCLUSION

2        Based on the foregoing discussion, the Court should affirm the Administration's final decision

3 denying plaintiff's application for social security disability benefits.  Pursuant to 28 U.S.C. § 636(b)(1) and

4 Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this

5 Report to file written objections. *See also* Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver

6 of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the

7 time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **January 12,**

8 **2007**, as noted in the caption.

9        DATED this 21st day of December, 2007.

10

11                                   */s/ J. Kelley Arnold*

                                     J. Kelley Arnold

12                                     U.S. Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28